UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| RUTH MAE CHELF,<br><br>                      Plaintiff,<br><br>v.<br><br>PRUDENTIAL INSURANCE COMPANY of AMERICA,<br><br>WAL-MART ASSOCIATES, INC., and<br><br>ADMINISTRATIVE COMMITTEE for the ASSOCIATES' HEALTH and WELFARE PLAN,<br><br>                      Defendant(s). | Civil Action No.  3:17-cv-736-GNS |

## COMPLAINT

### Introduction

This Complaint seeks all available legal and equitable relief arising from and relating to a life insurance policy administered, issued and insured by the applicable Defendants.  The headings in this Complaint are provided solely to assist in reviewing the statements and allegations contained herein. The factual allegations contained herein are not exhaustive and are intended to provide Defendant(s) with the requisite notice of Plaintiff's claims.

### Jurisdiction & Venue

1.      This Court has subject matter jurisdiction over the claims asserted in this action for monetary and equitable relief under Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1) and § 1132(f).

2.      Venue is appropriate in the United States District Court for the Western District of Kentucky pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.  Both Defendant and the plan sponsor can be found in this district.  Plaintiff resides in this district.

<u>Parties</u>

3.      Plaintiff Ruth Mae Chelf ("Ms. Chelf") is a Kentucky resident, the surviving spouse and named beneficiary for the insurance benefits at issue in this lawsuit.

4.      Defendant Prudential Insurance Company of America ("Prudential") is the issuer and insurer of the life insurance policy at issue in this lawsuit.  Prudential is a licensed and admitted insurer in, conducting business throughout, the Commonwealth of Kentucky.  Prudential's designated agent for service of legal process is:

> CT Corporation System
> 306 West Main Street, Suite 512
> Frankfort, KY 40601

5.      Defendant Wal-Mart Associates, Inc. ("Walmart") is the employer, insurer where applicable, and plan sponsor for the relevant insurance policies. Walmart was the agent for the Prudential life insurance policy. Walmart's designated agent for service of legal process is:

> CT Corporation System
> 306 West Main Street, Suite 512
> Frankfort, KY 40601

6.      Defendant Administrative Committee for the Associates' Health and Welfare Plan ("Administrator") is the plan administrator and named fiduciary for the relevant insurance policies.  The Administrator also served as the agent for the Prudential life insurance policy. The Administrator's designated agent for service of legal process is:

> Corporation Trust Company
> 1209 Orange Street Corporation Trust Center
> Wilmington, DE 19801

Facts

7.      Elmer L. Chelf ("Mr. Chelf") died from natural causes on April 17, 2016.

8.      Prior to his death, Mr. Chelf had been a full-time hourly associate employed by Wal-Mart Associates, Inc. ("Walmart"), as indicated on his pay stubs.

9.      As a Walmart employee, Mr. Chelf was eligible to purchase disability and life insurance benefits.

10.     Mr. Chelf elected to purchase short-term disability insurance from Walmart, with the requisite premium deducted from his biweekly paycheck.

11.     Mr. Chelf elected to purchase long-term disability insurance that was fully insured by Liberty Life Assurance Company of Boston ("Liberty"), with the requisite premium deducted from his biweekly paycheck.

12.     Mr. Chelf also elected to purchase $25,000 in optional associate term life insurance that was fully insured by Prudential, with the requisite premium deducted from his biweekly paycheck.

13.     The Prudential life insurance policy was issued in Arkansas.  The life insurance policy was issued effective January 1, 2014, was in effect at the time of Mr. Chelf's death, and was most recently renewed as of January 1, 2017.

14.     While insured under the respective disability and life insurance, Mr. Chelf requested a leave of absence from Walmart commencing with his last day worked, October 17, 2014, and applied for short-term disability benefits.

15.     Mr. Chelf's leave of absence, as well as his short-term disability insurance claim, was granted.

16.     When Mr. Chelf's short-term disability insurance benefits reached their maximum

duration in the spring of 2015, Mr. Chelf applied for long-term disability insurance benefits with Liberty.

17.     Mr. Chelf's long-term disability insurance claim was approved by Liberty, with monthly benefits paid from the spring of 2015 through the date of his death in April 2016.

18.     For the duration of his leave, under the Plan terms and conditions, Mr. Chelf was eligible to continue his elected insurance benefits.  The insurance premiums were initially deducted from his short-term disability benefits automatically.  Thereafter, when he began to receive long-term disability benefits, the premiums were paid directly by Mr. Chelf or deducted from any further funds paid or payable to him by Walmart.

19.     During the course of his disability leave and continuing through the date of his death, Mr. Chelf received funds from Walmart as well as had significant accrued paid time off payable to him at any time. Following his death, Walmart provided a paystub for the period ending June 24, 2016 that confirmed Mr. Chelf had 50.8 hours of unpaid time off.

20.     Pursuant to the terms of the short-term disability insurance policy, Mr. Chelf was *not* required to pay any insurance premiums for the duration of his claim (his disability) during which he was receiving short-term disability benefits.

21.     Pursuant to the terms of the long-term disability insurance policy, Mr. Chelf was *not* required to pay any insurance premiums for the duration of his claim (his disability) during which he was receiving long-term disability benefits, as well as during the elimination period.

22.     From the date his leave began in October 2014, until his death in April 2016, Walmart and the Plan charged Mr. Chelf insurance premiums for both his short-term disability and his long-term disability benefits.

23.     Mr. Chelf paid the required premiums necessary to maintain his life insurance

coverage for the duration of his disability leave and until his death.

24.     Mr. Chelf also paid the required premiums necessary to maintain his short-term disability insurance for the initial week (elimination period) before benefits commenced and after which no further insurance premiums were required.

25.     Mr. Chelf also paid the required premiums necessary to maintain his long-term disability insurance leading up to his date of disability.  After his date of disability, no further premiums were required for the duration of his long-term disability insurance claim.

26.     Mr. Chelf also had sufficient paid time off accumulated with Walmart to cover any life insurance premiums otherwise due during his disability leave.

27.     Following Mr. Chelf's death, Ms. Chelf filed a claim for all insurance benefits payable under the Prudential life insurance policy.  Pursuant to the terms of the life insurance policy, to file the claim, Ms. Chelf was directed to contact Walmart for claim forms which she did.  Ms. Chelf completed the required forms.

28.     While Prudential approved her claim for basic life insurance benefits, it was silent as to the optional associate term life insurance benefits.  Based on her communications with Walmart, Ms. Chelf learned that Prudential denied her optional associate term life insurance claim based on its position that the insurance coverage had allegedly terminated.  However, Prudential neglected to send Ms. Chelf a written letter of this adverse decision.  When Ms. Chelf's grandson contacted it by telephone, Prudential's claim representative referred her to Walmart and the Administrator.

29.     While not required to do so, Ms. Chelf also submitted a claim with the Administrator concerning Mr. Chelf's optional associate term life insurance coverage and premium payments.  The Administrator denied both her claim and her voluntary appeal.

30.     At the time of his death, Mr. Chelf was a covered person under the Prudential life insurance policy.  However, Prudential, Walmart, and the Plan treated his coverage as having terminated prior to April 2016.

31.     Both the Prudential life insurance policy and the Walmart summary plan description provide a participant, including Mr. Chelf, with the right to convert their life insurance coverage to an individual policy.  The conversion to an individual life insurance policy is automatic if the insured dies within 30 days of the date the life insurance coverage terminated. Mr. Chelf died within the requisite 30-day window.

32.     Prior to Mr. Chelf's death, neither Prudential, Walmart, nor the Plan ever informed Mr. Chelf in writing:

       a.     that his life insurance coverage had terminated;

       b.     that he had a right to convert his life insurance to an individual insurance policy;

       c.     that his premiums had not been assessed correctly; and

       d.     that any outstanding premium for his life insurance coverage could be paid with his unpaid time off funds.

Claims

A.     Breach of Contract - Prudential

33.     The life insurance policy is a written contract, with Prudential providing consideration of the insurance coverage (i.e. $25,000 optional associate term life coverage to Mr. Chelf for the benefit of Ms. Chelf – his designated and intended beneficiary) in exchange for Mr. Chelf's consideration of premium payments.

34.     Prudential breached the terms of the contract.  By way of example, and without

limitation, Prudential:

      a.    failed to timely or properly respond to Ms. Chelf's claim for the optional associate life coverage claim;

      b.    failed to provide notice of the adverse termination of Mr. Chelf's optional associate life coverage claim;

      c.    failed to provide notice of Mr. Chelf's right to convert his optional associate life coverage to an individual policy; and

      d.    failed to pay the $25,000 optional associate life benefit.

35.    Prudential's contractual breach damaged Ms. Chelf, not only in the loss of the benefits, but also in the loss of earnings on the unpaid benefits, the loss of opportunity, and attorneys' fees and costs incurred.

36.    29 U.S.C. §§1132(a)(1)(B) and (a)(3) is the enforcement mechanism permitting Ms. Chelf to enforce the contractual terms of the life insurance policy, to obtain past benefits, to obtain interest, to obtain declaratory relief, and to obtain other appropriate equitable relief including, but not limited to, surcharge, make-whole relief, and disgorgement.

37.    29 U.S.C. §§1132(g) is the enforcement mechanism permitting Ms. Chelf to recover her attorneys' fees and costs.

### B.    Breach of Fiduciary Duty – All Defendants

38.    Defendants, individually and collectively, were acting as fiduciaries with respect to the Prudential life insurance policy and Mr. Chelf's optional associate term life coverage.

39.    Each of the Defendants exercised control over the life insurance policy and premiums, which constituted a plan asset.

40.    Defendants breached their respective fiduciary duties to Mr. Chelf, and to Ms. Chelf.  By way of example, and without limitation, Defendants:

a.   failed to disclose to the Mr. Chelf that he had a right to convert his associate term life insurance;

b.   failed to timely remit and to apply Mr. Chelf's associate term life insurance premium payments;

c.   failed to correctly advise Mr. Chelf concerning the actual associate term life premiums due, if any;

d.   failed to apply Mr. Chelf's unpaid time off to any past due associate term life insurance premiums;

e.   failed to advise Mr. Chelf that he could apply his unpaid time off to any outstanding associate term life premiums paid;

f.   failed to comply with ERISA's regulatory requirements, as well as the plan requirements, concerning Mr. Chelf's associate term life insurance coverage and adverse decisions; and

g.   failed to convey complete and accurate information material to Mr. Chelf's circumstances.

41.     Mr. Chelf, as well as Ms. Chelf, reasonably relied on Defendants' misrepresentations and omissions concerning the associate term life insurance coverage, as well as the applicable premiums charged for all plan benefits (i.e. short-term disability, long-term disability).

42.     Defendants' misrepresentations and omissions were material to Mr. Chelf's, and ultimately to Ms. Chelf's, decisions concerning the associate term life insurance coverage.

43.     29 U.S.C. §§1132(a)(3) is the enforcement mechanism permitting Ms. Chelf to seek relief for Defendants' breach of fiduciary duty including equitable estoppel, declaratory relief, and other appropriate equitable relief including, but not limited to, surcharge, make-whole relief, and disgorgement.

44.     29 U.S.C. §§1132(g) is the enforcement mechanism permitting Ms. Chelf to

recover her attorneys' fees and costs.

Prayer for Relief

45.     Ms. Chelf requests the Court enter judgment in her favor and against Defendants,

individually and collectively, on all claims asserted herein.

46.     Ms. Chelf requests the Court award all available legal or equitable relief.

47.     Ms. Chelf requests the Court award her reasonable attorneys' fees and costs.

48.     Ms. Chelf requests the Court award pre- and post-judgment interest at the greater

of the prime rate or the rate earned by Defendant(s).

49.     Ms. Chelf requests leave to amend her complaint when and as needed.

---

Dated:  December 6, 2017                    Respectfully submitted by,

                                            s/ Michael D. Grabhorn          .
                                            Michael D. Grabhorn
                                            *m.grabhorn@grabhornlaw.com*
                                            Andrew M. Grabhorn
                                            *a.grabhorn@grabhornlaw.com*
                                            Grabhorn Law | Insured Rights™
                                            2525 Nelson Miller Parkway, Suite 107
                                            Louisville, KY 40223
                                            p: (502) 244-9331
                                            f: (502) 244-9334