UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00736-GNS-RSE

RUTH MAE CHELF                                                                                         PLAINTIFF

v.

PRUDENTIAL INSURANCE COMPANY
OF AMERICA, et al.                                                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Plaintiff's Motion for Summary Judgment (DN 100), Defendants' Cross-Motion for Summary Judgment (DN 103); and Plaintiff's Motion to Strike (DN 105). The motions are ripe for adjudication. For the following reasons, Plaintiff's motions are **DENIED**, and Defendants' motion is **GRANTED**.

**I.     BACKGROUND**

Plaintiff Ruth Mae Chelf ("Ruth Mae") is the widow of Elmer L. Chelf ("Elmer") (jointly the "Chelfs"), who held optional associate term life insurance issued by Prudential through his employer, Defendant Wal-Mart Associates, Inc., and administered by Defendant Administrative Committee for the Associates' Health and Welfare Plan (jointly "Defendants"). (*See* Pl.'s Mot. Summ. J. Ex. A, at 21, DN 100-1; Pl.'s Mot. Summ. J. Ex. B, at 4-5, 7-8, DN 100-2; Pl.'s Mot. Summ. J. Ex. H, at 16, 28-29, 72, DN 100-8). Elmer also had short-term disability insurance and short-term disability plus insurance, which was self-insured through the Associates' Health and Welfare Plan (the "Plan") trust, and he had long-term disability insurance through Liberty Life Assurance Company of Boston ("Liberty"). (Pl.'s Mot. Summ. J. Ex. A, at 21; Pl.'s Mot. Summ.

1

J. Ex. C, at 2, 14, 22, DN 100-3; Pl.'s Mot. Summ. J. Ex. D, at 1, 4, DN 100-4). Elmer's optional life insurance and disability benefits are protected by the Employee Retirement Income Security Act ("ERISA"). (*See* Pl.'s Mot. Summ. J. Ex. D, at 4; Pl.'s Mot. Summ. J. Ex. F, at 4, 16, DN 100-6; Pl.'s Mot. Summ. J. Ex. H, at 5).

In October 2014, Elmer took a leave of absence, and he began collecting short-term disability benefits in November, following a fourteen-day waiting period during which he collected sick pay. (*See* Pl.'s Mot. Summ. J. Ex. F, at 17; Pl.'s Mot. Summ. J. Ex. A, at 19-20; Pl.'s Mot. Summ. J. Ex. C, at 16). In the spring of 2015, Elmer began receiving long-term disability insurance benefits from Liberty. (Answer ¶ 17, DN 85 (admitting the same)). At various points during Elmer's leave of absence, his optional life insurance premiums were past due, but payments from his family or sporadic payroll deductions brought his account current as of mid-December 2015. (Pl.'s Mot. Summ. J. Ex. F, at 5-6). After that, however, Elmer's optional life insurance premiums were not paid apart from one payment deducted from incentive pay he received as reflected on his March 10, 2016, paystub. (Pl.'s Mot. Summ. J. Ex. F, at 18; Pl.'s Mot. Summ. J. Ex. A, at 4). Elmer's optional life insurance coverage was later cancelled because Elmer's past-due premiums were not paid by March 18, 2016. (Pl.'s Mot. Summ. J. Ex. F, at 18).

Elmer died on April 17, 2016. (Pl.'s Mot. Summ. J. Ex. B, at 13). Following his death, Ruth Mae filed a claim as the named beneficiary for insurance benefits under the Prudential life insurance policy. (Pl.'s Mot. Summ. J. Ex. B, at 7-12). Although Prudential approved Ruth Mae's claim for basic life insurance benefits, it denied her optional associate term life insurance claim because the coverage had terminated prior to Elmer's death for failure to pay premiums.

(*See* Pl.'s Mot. Summ. J. Ex. B, at 1-3). Ruth Mae submitted a claim with the Administrator, which also denied the claim and her voluntary appeal. (Pl.'s Mot. Summ. J. Ex. F, at 4, 16).

Ruth Mae filed this action on December 6, 2017, claiming that Defendants breached their fiduciary duties, entitling her to relief under 29 U.S.C. § 1332(a)(3). (Compl. ¶¶ 33-44, DN 1).[1] Ruth Mae alleges that Defendants deducted excess premiums for Elmer's disability benefits; failed to apply Elmer's paid time off ("PTO") to his past-due optional life insurance premiums; and failed to inform the Chelfs that premiums were past due, that Elmer could use PTO to pay premiums, that the optional life insurance plan had been terminated, and that Elmer could convert his optional life insurance. (Compl. ¶¶ 2-22, 32, 38-44).

Defendants filed a motion to dismiss which this Court granted, holding that Ruth Mae's claims either fell outside ERISA's fiduciary requirements or were administrative and not fiduciary functions. (*See* Def.'s Mot. Dismiss, DN 18; Mem. Op. & Order 10-12, DN 28). Ruth Mae appealed, and the Sixth Circuit Court of Appeals reversed the dismissal as to Ruth Mae's claims that Defendants deducted excess premiums and failed to use Elmer's accrued PTO for premium payments, but it affirmed to the extent dismissal was based on Defendants' alleged failure to inform Elmer of his conversion right. (Notice Appeal, DN 76); *Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 466-69 (6th Cir. 2022). The Sixth Circuit remanded the case, and the parties have each moved for summary judgment. *Chelf*, 31 F.4th at 469; (Pl.'s Mot. Summ. J., DN 100; Defs.' Resp. & Cross-Mot. Summ. J., DN 103). Ruth Mae also moves to strike the declaration of one of Defendants' witnesses. (Pl.'s Mot. Strike, DN 105).

---

[1] The lawsuit initially also included a breach of fiduciary claim and a 29 U.S.C. § 1332(a)(1)(B) breach of contract claim against Prudential Insurance Company of America, but Prudential has since been dismissed from this case. (Compl. ¶¶ 33-44; Order 1, DN 75).

## II. JURISDICTION

The Court has jurisdiction over this matter because a federal question is presented. *See* 28 U.S.C. § 1331.

## III. DISCUSSION

### A. Motions for Summary Judgment (DN 100, 103)

#### 1. *Standard of Review*

Certain ERISA claims, like a breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), are decided pursuant to the summary judgment standard under Fed. R. Civ. P. 56. *See Tregoning v. Am. Cmty. Mut. Ins. Co.*, 12 F.3d 79, 80 (6th Cir. 1993). In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine

dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252. This standard applies even when considering cross-motions for summary judgment. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citation omitted).

### 2. *Breach of Fiduciary Duty 29 U.S.C. § 1332(a)(3)*[2]

Both parties move for summary judgment on Ruth Mae's breach of fiduciary duty claim, which is her only claim against Defendants. (Pl.'s Mot. Summ. J. 1-2, 12-13; Defs.' Resp. & Cross-Mot. Summ. J. 1; Compl. ¶¶ 38-44). To prevail, Ruth Mae must prove that "(1) the defendant is a plan fiduciary; (2) the defendant breached its fiduciary duty; and (3) the breach resulted in harm to the plaintiff." *Chelf*, 31 F.4th at 464 (citation omitted).

#### a. **Plan Fiduciary**

The first element is satisfied at least as to the Administrative Committee for the Associates' Health and Welfare Plan, which the parties agree is the Plan's named fiduciary. (Pl.'s Mot. Summ. J. 11; Defs.' Resp. & Cross-Mot. Summ. J. 13-14; Pl.'s Mot. Summ. J. Ex. H, at 16, 59). The parties dispute, however, whether Wal-Mart Associates, Inc., which was responsible for deducting premiums and Plan contributions, is also a fiduciary. (Defs.' Resp. & Cross-Mot. Summ. J. 14-15; Pl.'s Reply Mot. Summ. J. 8-9, DN 104). Considering Defendants together, the Sixth Circuit on appeal observed that they are fiduciaries because they "exercised control over the Plan's assets when it handled [Elmer]'s premiums, exercised control over the disposition of the Plan's assets, and had discretionary authority over the administration of the

---

[2] Defendants argue that Ruth Mae's breach of fiduciary duty claim is a repackaged claim under 29 U.S.C. § 1132(a)(1)(B). (Defs.' Resp. & Cross-Mot. Summ. J. 11-12). The Court need not address this argument, however, because it rejected it in a previous order and because Ruth Mae's claim fails on the merits. (*See* Mem. Op. & Order 5-8, 8 n.2, DN 28).

Plan." *Chelf*, 31 F.4th at 466 (citing 29 U.S.C. § 1002(21)(A)). Defendants still contend that Wal-Mart Associates is not a fiduciary, but because, as addressed below, Ruth Mae cannot establish the other elements of her claim, the Court need not address this issue.[3] (Defs.' Resp. & Cross-Mot. Summ. J. 14-15).

### b. Breach of Fiduciary Duty

Ruth Mae asserts that Defendants breached their fiduciary duties when: (1) they deducted short-term disability plus ("STD+") and long-term disability (LTD) premiums when they were not due; (2) they failed to apply Elmer's accrued PTO to pay his optional life insurance premiums; and (3) they failed to notify the Chelfs that premiums were past due, that premiums could be paid using PTO or other accrued hours, or that the optional life insurance policy had been cancelled and the time for Elmer to convert it was running. (Pl.'s Mot. Summ. J. 17-20).

#### i. Short-Term Disability Plus Premiums

Ruth Mae contends that STD+ premium payments were not due while Elmer was collecting disability benefits, so Defendants erroneously deducted STD+ premiums from Elmer's paychecks from January 29, 2015, to May 7, 2015. (Pl.'s Mot. Summ. J. 17-18). Ruth Mae, however, has not submitted any evidence to prove that the deductions were improper. She cites portions of the summary plan description ("SPD") stating that short-term disability premiums are

---

[3] Ruth Mae claims that the Sixth Circuit's opinion resolved the fiduciary issue and many others in the case. (*See* Pl.'s Mot. Summ. J. 1, 14-16, 23). Indeed, Ruth Mae asserts that the Sixth Circuit's opinion left a "narrow" issue for this Court to consider and draws on the law-of-the-case doctrine to suggest that she is entitled to relief. (*See* Pl.'s Mot. Summ. J. 1, 23, 24 n.95). The law-of-the-case doctrine, however, "does not apply to earlier proceedings where a different legal standard governs . . . ." *In re B & P Baird Holdings, Inc.*, 759 F. App'x 468, 477 (6th Cir. 2019) (citation omitted); *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000) ("[O]ur holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery.").

not due from short-term disability payments an insured receives, but the SPD differentiates between short-term disability and STD+ benefits. (Pl.'s Mot. Summ. J. 17-18 (citing Pl.'s Mot. Summ. J. Ex. C, at 17, 23, 29); *see* Pl.'s Mot. Summ. J. Ex. C, at 17, 48; Ogle Decl. ¶ 6, DN 18-2 [hereinafter Ogle Decl. 1]; Ogle Decl. 1 Ex. 3, at 159, DN 18-5). The SPD explicitly provides that STD+ premiums are still due and are deducted each pay period, even from short-term disability payments. (Pl.'s Mot. Summ. J. Ex. C, at 17, 48; Ogle Decl. 1 Ex. 3, at 153). During the pay periods in question, Elmer was collecting short-term disability, so under the Plan's terms, he still owed STD+ premiums, and they were therefore properly deducted from his short-term disability checks. (Pl.'s Mot. Summ. J. Ex. A, at 8-15).

### ii.    Long-Term Disability Premiums

Ruth Mae asserts that on the paystubs from November 5, 2015, and November 19, 2015, a total of $5.80 in premium payments was deducted from Elmer's sick pay, which was improper under Liberty's LTD policy. (Pl.'s Mot. Summ. J. 18; Pl.'s Mot. Summ. J. Ex. A, at 6-7). Liberty's policy states, "Premium payments for a Covered Person are waived during any period for which benefits are payable." (Pl.'s Mot. Summ. J. Ex. D, at 3, 7). Defendants respond that the SPD controls, and under it, an employee "will not be required to pay . . . long-term disability premiums from any long-term disability benefit payments received. If, however, [the employee] receive[s] any other earnings through the Walmart payroll systems . . . [the] premiums will be withheld from those payments." (Defs.' Resp. & Cross-Mot. Summ. J. 23; Ogle Decl. 1 Ex. 3, at 165). Liberty's policy, however, controls. The SPD itself states that it is merely a summary and "[if] there is a discrepancy between this document and the policy issued by Liberty Life Assurance Company of Boston . . . the terms of the policy will govern." (Ogle Decl. 1 Ex. 3, at 160); *see Harris-Frye v. United of Omaha Life Ins. Co.*, No. 1:14-CV-72, 2015 WL 5562196, at

7

*10 (E.D. Tenn. Sept. 21, 2015) (concluding that a plan document and not an SPD was the controlling ERISA document because it "belies logic" to claim that the SPD controls when the SPD stated that if there were differences, the plan document controlled). Accordingly, assuming that LTD benefits were payable during the relevant pay periods, the premium deductions were improper.[4]

### iii.   PTO Pay

Ruth Mae asserts that Defendants had "automatically" used sick and personal pay to satisfy the premiums in the past but failed to continue to do so, although Elmer had sufficient PTO hours to pay the optional life insurance premiums from December 2015 to his death in April 2016. (Pl.'s Mot. Summ. J. 19-21). As an example, Ruth Mae points to Elmer's paystubs from November 5, 2015, and November 19, 2015, where his optional life insurance premium was deducted from his paychecks that were drawing sick pay and personal pay. (Pl.'s Mot. Summ. J. 19 (citing Pl.'s Mot. Summ. J. Ex. A, at 6-7). Ruth Mae appears to be arguing that Defendants should have used Elmer's accrued sick, personal, and PTO pay in order to ensure that his optional life insurance premiums were deducted and paid. (*See* Pl.'s Mot. Summ. J. 19-21; Pl.'s Reply Mot. Summ. J. 12). The problem is, under Defendants' payroll policies, employees must request to use their sick pay, personal pay, or PTO pay. (Ogle Decl. ¶ 12, DN 103-1 [hereinafter Ogle Decl. 2]; Ogle Decl. 2 Ex. 1 (PageID # 2403-04, 2408-09, 2414, 2418),

---

[4] The parties do not explain whether the LTD benefits were payable when LTD premiums were deducted from the November 5, 2015, and November 19, 2015, paychecks. (*See* Pl.'s Mot. Summ. J. 2-4, 17-19; Defs.' Resp. & Cross-Mot. Summ. J. 22-24; Pl.'s Reply Mot. Summ. J. 13-14). Ruth Mae only states that "once [Elmer] was receiving LTD benefits, he was not required to pay any LTD premiums—regardless of the source of payments" and "[t]he LTD policy is clear that [Elmer]'s premiums were waived while receiving LTD benefits." (Pl.'s Mot. Summ. J. 17 (emphasis omitted); Pl.'s Reply Mot. Summ. J. 13 (emphasis omitted)). Elmer's paystubs, however, show that he was receiving sick pay when the LTD premiums were allegedly improperly deducted, so it is unclear whether he was also collecting LTD benefits at that time or whether they were otherwise payable. (Pl.'s Mot. Summ. J. Ex. A, at 6-7).

8

DN 103-2).[5]  There is simply no evidence to suggest that Defendants could have chosen to issue payroll checks for Elmer's PTO pay from which it could have deducted his optional life insurance premiums, without Elmer's request that it do so.  (*See* Ogle Decl. Ex. 3, at 153, 159).  Additionally, there is no evidence, nor does Ruth Mae argue, that Defendants ignored a request from Elmer to collect his accrued pay or failed to deduct optional life insurance premiums at any time when Elmer chose to and did collect his accrued PTO pay.  (*See* Pl.'s Mot. Summ. J. 19-21; Pl.'s Reply Mot. Summ. J. 12).  In sum, the evidence cannot reasonably support the conclusion that Defendants' actions regarding sick, personal, and PTO pay were improper.

### iv.     Failure to Disclose[6]

Ruth Mae argues that Defendants breached their fiduciary duty to disclose to the Chelfs that the optional life insurance premiums were past due, that premiums could be paid using PTO or other accrued hours, and that the optional life insurance policy had been cancelled and the time to convert it was running.  (Pl.'s Mot. Summ. J. 20).

ERISA contains "detailed disclosure provisions" that require plan fiduciaries to provide an SPD with various information about participants' rights and benefits under the relevant plan.  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 401-02, 405 (6th Cir. 1998); 29 U.S.C. § 1022(b); 29 C.F.R. § 2520.102-3.  The Sixth Circuit has held that ERISA's fiduciary standards do not impose a duty to disclose information that that the statute does not require.  *Sprague*, 133 F.3d at 405; *Walker v. Fed. Express Corp.*, 492 F. App'x 559, 566 (6th Cir. 2012) ("ERISA does not

---

[5] Ruth Mae has moved to strike Christina Ogle's declaration, but as explained below, that motion is denied.

[6] In its *Chelf* opinion, the Sixth Circuit observed that Ruth Mae's allegations for failure to disclose failed to state a claim because she did not raise any factual allegations that fit into the *Sprague* categories, and the Court pointed out that Ruth Mae could request to amend her Complaint, but she did not.  *Chelf*, 31 F.4th at 467-69.  Nevertheless, the parties briefed the claims, so they are addressed below.

9

contain any provision that requires a plan administrator to provide notice to plan participants other than a summary plan description and information of the benefits plan as discussed under 29 U.S.C. §§ 1021(a)(1) and 1022."). In *Sprague*, however, the Sixth Circuit recognized three situations in which a fiduciary may breach its duty to disclose information not required under the statute:

> (1) an early retiree asks a plan provider about the possibility of the plan changing and receives a misleading or inaccurate answer or (2) a plan provider on its own initiative provides misleading or inaccurate information about the future of the plan or (3) ERISA or its implementing regulations required the employer to forecast the future and the employer failed to do so.

*James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 453 (6th Cir. 2002). The Sixth Circuit has further explained that the first category requires fiduciaries to provide complete information in response to participants' questions, even if the participant did not ask precise questions about specific benefits. *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 549-50 (6th Cir. 1999); *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 988 (6th Cir. 2018). Ruth Mae does not argue that the SPD was incomplete or inaccurate or that Defendants otherwise did not meet their statutory disclosure requirements, so she must raise facts that fit into one of the above scenarios. *See Chelf*, 31 F.4th at 467; *Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 844 (6th Cir. 2003); (Pl.'s Mot. Summ. J. 19-23; *cf.* Pl.'s Mot. Summ. J. 3, 17 (arguing that Defendants did not follow the SPD's requirements)).

### (a) The March 4 Letter

The parties' main dispute regarding the failure to disclose allegations concerns a letter that allegedly notified the Chelfs that the optional life insurance premiums were overdue. (Pl.'s Mot. Summ. J. 7-8; Defs.' Resp. & Cross-Mot. Summ. J. 9, 18; Pl.'s Reply Mot. Summ. J. 4). Defendants assert that they sent the letter on March 4, 2016, but Ruth Mae insists that neither she

nor Elmer received it. (Defs.' Resp. & Cross-Mot. Summ. J. 9; Pl.'s Reply Mot. Summ. J. 11). The dispute is immaterial, however, because even if Defendants sent the letter and the Chelfs never received it, Defendants did not breach a fiduciary duty because the letter does not fit into any of the *Sprague* categories. The first category does not apply because there is no evidence and Ruth Mae does not argue that the letter was an incomplete, misleading, or inaccurate response to a question. *See Vest*, 905 F.3d at 988-89; (See Pl.'s Mot. Summ. J. 7-8; Pl.'s Reply Mot. Summ. J. 4, 11). Even if the letter was misleading or inaccurate and Defendants sent it on their own initiative, it could hardly fit the second category if the Chelfs never received it, and the letter plainly does not fit the third category. *See Sprague*, 133 F.3d at 406; *Vest*, 905 F.3d at 988-89. Defendants therefore did not have a duty to notify the Chelfs that premiums were due. *See Bowles v. Estes Express Lines Corp.*, No. 2:22-CV-2660-SHL-ATC, 2024 WL 1142073, at *7 (W.D. Tenn. Mar. 15, 2024) (concluding that the defendant did not have a fiduciary duty to notify a plan participant that premiums were no longer being deducted from paychecks).[7]

---

[7] In her post-hearing supplemental briefing, Ruth Mae argues for the first time that because Defendants had previously sent letters notifying the Chelfs of past-due premiums, Defendants "assumed" a duty to continue to send them. (Pl.'s Suppl. Br. 6, DN 116; *see* Ogle Decl. 2 Exs. 4-6, DN 103-5 to 103-7). Parties may not raise an argument for the first time in post-hearing supplemental briefing, so the Court need not consider it. *See Stockler v. Reassure Am. Life Ins. Co.*, No. 11-CV-15415, 2013 WL 866486, at *8 (E.D. Mich. Mar. 7, 2013) ("[A]n argument raised for the first time at a hearing or oral argument is not properly before the Court." (citations omitted)); *United States v. Lockett*, 359 F. App'x 598, 613 (6th Cir. 2009) (declining to address an argument not raised in a party's opening brief). Regardless, the argument is not well taken because Ruth Mae's cited authority is not analogous to this case. *See Principal Life Ins. Co. v. Howard-Kembitzky*, No. 2:22-CV-3421, 2023 WL 6392446, at *4 (S.D. Ohio Oct. 2, 2023) (concluding that the insurance company was acting in a fiduciary capacity when it answered the insured's questions); *United States ex rel. Merena v. Smithkline Beecham Corp.*, Nos. 93-5974, 95-6953, 95-6551, 96-7768, 97-1186, 97-3643, 1997 U.S. Dist. LEXIS 17041, at *5 (E.D. Pa. Oct. 27, 1997) (discussing potential fiduciary obligations in a False Claims Act case).

Additionally, the SPD notified the Chelfs that optional life insurance premiums were still owed during a leave of absence, short-term disability, and long-term disability and that if the premiums were not paid, the optional life insurance would be canceled. (Pl.'s Mot. Summ. J. Ex. C, at 4-5, 10, 17, 23, 29, 35-36, 41, 47, 54, 60, 66, 71, 79, 86). The Chelfs were also personally aware of this fact, as evidenced by their repeated calls to Defendants to inquire about the premiums due and their subsequent payments. (Ogle Decl. 2 Ex. 2 (PageID # 2422, 2427, 2428), DN 103-3; Ogle Decl. 2 ¶¶ 14-37; Ogle Decl. 2 Ex. 3 (PageID # 2433), DN 103-4; Pl.'s Mot. Summ. J. Ex. F, at 5-6, 17-18). There is no evidence that Defendants breached any fiduciary duty with regard to premium payment notifications. *Cf. Jordan v. Tyson Foods, Inc.*, 257 F. App'x 972, 979 (6th Cir. 2007) (concluding that the defendant did not wrongfully terminate the plaintiff's health plan for unpaid premiums where the plaintiff had notice of his responsibility to pay premiums, despite the fact that the defendant did not send the premium due dates to the plaintiff's correct address).

### (b) The Paystubs

Ruth Mae contends that Elmer's March 10, 2016, paystub misrepresented that Elmer's optional life insurance coverage was still in effect because a premium was deducted from that check. (Pl.'s Mot. Summ. J. 20; Pl.'s Mot. Summ. J. Ex. A, at 4). Elmer's optional life insurance, however, was still in effect when that premium was deducted—his optional life insurance was canceled after Defendants did not receive all the past-due premium payments by March 18, 2016. (Pl.'s Mot. Summ. J. Ex. F, at 6, 18). Because, at the time, the paystub's representation was true, it also does not fall under any of the *Sprague* categories and does not constitute a breach of fiduciary duty. *Sprague*, 133 F.3d at 405 ("[W]e do not think that [the defendant]'s accurate representations of its current program can reasonably be deemed

12

misleading. [The defendant] having given out no inaccurate information, there was no breach of fiduciary duty.").

Ruth Mae also argues that the November 5, 2015, and November 19, 2015, paystubs were misleading because they "misrepresented to the Chelfs the premiums had been paid[,]" and she argues that the December 3, 2015, paystub was misleading because it "misrepresented to the Chelfs the premiums . . . were not due." (Pl.'s Reply Mot. Summ. J. 10). This argument, apart from being inappropriate because it appears for the first time in her reply, fails for the same reason as above. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). As the SPD explains, optional life insurance premiums are due every pay period, so the November 2015 paystubs correctly represented that the premiums had been paid for those periods. (Pl.'s Mot. Summ. J. Ex. C, at 35-36, 41, 47, 54, 60). The December 3, 2015, paystub did not represent that no premiums were due; it showed $0.00 under the deductions column because no optional life insurance premium had been deducted, and the earnings column reflected that the earnings that pay period were insufficient to cover it. (Pl.'s Mot. Summ. J. Ex. A, at 5).

### (c) Additional Arguments

Ruth Mae makes two additional arguments for the first time in her post-hearing supplemental brief. (*See* Pl.'s Suppl. Br. 3-5, 7-8). The arguments are not properly before this Court, and even if they were, they are not well-taken. *See Stockler*, 2013 WL 866486, at *8; *Lockett*, 359 F. App'x at 613. First, Ruth Mae argues that during her call to Defendants on October 23, 2015, Defendants should have but did not inform her of every way Elmer's optional life insurance premiums could be paid, namely that he could use his PTO pay. (Pl.'s Suppl. Br. 3-5). Ruth Mae relies on *Krohn*, which concerned a plaintiff who had been seriously injured in a car accident. *Krohn*, 173 F.3d at 545. The plaintiff's husband called the defendant to ask what

benefits she was entitled to, and the defendant provided information about short-term disability benefits but not long-term disability benefits. *Id.* The Sixth Circuit held that the defendant breached its fiduciary duty to inform the Krohns of the long-term disability benefits because it "received notice repeatedly that the plaintiff would be eligible for and would need long-term disability benefits" and knew that Krohn had a limited amount of time to secure them. *Id.* at 549-50. Ruth Mae does not explain whether Defendants should have known to explain how Elmer could pay his optional life insurance premiums, but more importantly, there is no evidence to support Ruth Mae's allegations. (Pl.'s Suppl. Br. 3-4). The supplemental brief merely contains speculation about any statements that could have been made during the October 23, 2015, phone call and how that scenario could demonstrate a breach of fiduciary duty. (Pl.'s Suppl. Br. 4-5). The only evidence of what transpired during the October 23, 2015, call is an abbreviated single-line call log, which is hardly a comprehensive account of the call. (See Ogle Decl. 2 Ex. 2 (PageID # 2428)). The record contains no evidence of the substance of that conversation, such as deposition testimony or a declaration from Ruth Mae or the representative with whom she spoke, in stark contrast to the facts of *Krohn*. *Krohn*, 173 F.3d at 545.

Second, Ruth Mae contends that a fiduciary must inform a plan participant that their insurance coverage will lapse. (Pl.'s Suppl. Br. 7). Three of the cases Ruth Mae cites concern breaches of fiduciary duty where companies who faced financial or administrative problems failed to pay insurance premiums, then failed to notify employees that their coverage would lapse, which plainly do not relate to this case. *See Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 471-72 (7th Cir. 1997); *Cook v. Jones & Jordan Eng'g, Inc.*, No. 5:06CV00627, 2009 WL 37376, at *6 (S.D.W. Va. Jan. 7, 2009); *Hammer v. Johnson Senior Ctr., Inc.*, No. 6:19-CV-00027, 2020 WL 7029160, at *1-2, *10 (W.D. Va. Nov. 30, 2020). The other case concerns a

breach of fiduciary duty resulting from incomplete information in response to a question, the first *Sprague* category and the scenario in *Krohn*. *See Palen v. Kmart Corp.*, 215 F.3d 1327, 2000 WL 658115, at *3-4 (6th Cir. 2000) (unpublished table decision) (defendant fiduciary liable for not giving information about continuation of life insurance benefits where the plaintiff had asked for information about "continuation of all [her husband's] benefits."). As explained above, Ruth Mae has not pointed to any record evidence that fits in that or any other category.

### c. Plaintiff's Harm

The final element of an ERISA breach of fiduciary duty claim requires Ruth Mae to prove that a breach of fiduciary duty resulted in harm to her. *Chelf*, 31 F.4th at 464. Ruth Mae argues that the harm she suffered was the denial of Elmer's optional life insurance benefit. (Pl.'s Mot. Summ. J. 1, 23-24; *see* Pl's Suppl. Br. 10). As explained above, Ruth Mae has not established any breach of fiduciary duty apart from $5.80 which was presumably improperly deducted for LTD premiums. As Ruth Mae herself explains, however, Elmer owed optional life insurance premiums of approximately $17.00 for at least seven pay periods, or roughly $119.00.[8] (Pl.'s Mot. Summ. J. 21). The mistake did not result in Ruth Mae's loss of Elmer's optional life insurance benefits because $5.80 could not have paid even one pay period's overdue premium for the optional life insurance policy. Accordingly, Ruth Mae fails to satisfy the third element of her claim, so it fails. *Bouteiller v. Vulcan Iron Works, Inc.*, 834 F. Supp. 207, 214 (E.D. Mich. 1993) (granting summary judgment on a plaintiff's ERISA breach of fiduciary duty claim because there was no causation between the purported breach of fiduciary duty and the plaintiff's damages).

---

[8] Elmer's total premiums, which included his vision and dental, were then around $34. (Pl.'s Mot. Summ. J. Ex. F, at 6). His optional life insurance premium alone was around $17. (Pl.'s Mot. Summ. J. Ex. F, at 6). The $5.80 could not have paid one payment for either benefit.

### B. Plaintiff's Motion to Strike (DN 105)

Defendants support their Response and Cross Motion for Summary Judgment with a declaration from Christina Ogle ("Ogle") (DN 103-1). Ruth Mae moves to strike the declaration, primarily because it does not explain Ogle's title or how she has personal knowledge to support her statements. (Pl.'s Mot. Strike 1-4, DN 105). At a motion hearing before this Court, Ruth Mae explained that she moved to strike the declaration because of Ogle's allegedly unsupported statements regarding whether the March 4, 2016, letter was sent, so if the Court concludes that the letter is immaterial, striking Ogle's declaration is unnecessary. Because, as explained above, whether the March 4, 2016, letter was sent does not impact the Court's conclusions, and because Defendants later provided a supplemental declaration that explained Ogle's title and responsibilities, the motion to strike is denied. (Ogle Suppl. Decl. ¶¶ 1-9, DN 106-2).

### IV. CONCLUSION

For the reasons above, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment (DN 100) and Plaintiff's Motion to Strike (DN 105) are **DENIED**.

2. Defendants' Cross-Motion for Summary Judgment (DN 103) is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**.

3. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

June 27, 2024

cc: counsel of record